**CONCORD CONTROL, INC.,**
**Plaintiff-Appellee,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Intervenor-Defendant-Appellant,**

and

**Pension Benefit Guaranty Corporation, Defendant-Appellant.**

**Nos. 78–3252 to 78–3254.**

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1980.

Decided May 6, 1981.

Rehearing Denied June 24, 1981.

Henry Rose, E. Calvin Golumbic, James N. Dulcan, Pension Benefit Guaranty Corp., Washington, D. C., for Pension Benefit Guaranty Corp.

Thomas Terp, Taft, Stettinius & Hollister, Cincinnati, Ohio, Harold G. Blatt, Bryan, Cave, McPheeters & McRoberts, Juan D. Keller, Michael G. Biggers, St. Louis, Mo., for Concord Control, Inc.

Paul H. Tobias, Tobias & Kraus, Cincinnati, Ohio, John A. Fillion, Jordan Rossen, M. Jay Whitman, Anne M. Trebilcock, Detroit, Mich., for International Union, etc. (UAW).

Susan Grogan Faller, Frost & Jacobs, Cincinnati, Ohio, for The Central Trust Co., intervenor.

Before MERRITT, BROWN and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Concord Control, Inc. (Concord Control) filed this action to obtain a declaratory judgment that the Pension Plan (Plan) for the employees of the K–D Lamp Company was not covered by the plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974 (ERISA). The district court held that the Plan was not covered because it did not "provide for" employer contributions to the Plan after the enactment of ERISA. 29 U.S.C. § 1321(b)(5). We reverse.

## I.

In 1956, the K–D Lamp Company and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) entered into a pension agreement; the Plan was established pursuant to the agreement. A trust was created to hold the Plan's assets. The obligation for past service credit was greater than the trust's assets, but the Company's payments were intended to gradually reduce the asset insufficiency. In 1966, Concord Control took over the K–D Lamp Company and it has been operated as a division of Concord Control since that time.

In 1972, Concord Control and the UAW signed a new pension agreement governing the employees at the K–D Lamp Company. The agreement amended the Plan and restated its terms. The agreement and the Plan are both included in a single document; a separate collective bargaining agreement contains the non-pension terms of employment.

As amended and restated in 1972, the Plan provides for monthly retirement benefits for participating employees. The benefits are determined by multiplying a participant's years of credited service with the Company by the fixed dollar amounts set out in the Plan. The Plan also provides for lump sum benefits in lieu of monthly retirement benefits.

The Plan's benefits are funded by employer contributions. Article II, section 1 of the Plan provides for the employer to pay a specific amount into the trust for each hour worked by a participating employee. This amount increased by specific increments during the life of the agree-

ment: from 29 cents per hour worked in June 1971, to 41 cents per hour worked in December 1973. The agreement also recited that "no employees shall make or be required to make any payment to the retirement fund ..."

On August 7, 1974, the pension agreement expired. The funding provisions of the Plan expired with it. The UAW and Concord Control began negotiating a new collective bargaining agreement and pension agreement several months before the agreement expired, but the negotiations were unsuccessful.

The plan remained in effect even though the pension agreement expired. Article III, section 3 of the Plan provided: "Termination of this Agreement shall not have the effect of automatically terminating the Plan. In the event of termination of this Agreement, ... the Company may continue, amend, modify, suspend, or terminate the Plan by action of its Board of Directors ..."

On August 8, 1974, the union went on strike. The Company hired strike replacements. It made contributions to the Plan (during the period of the strike) for the hours that employees worked before the strike, but it did not make contributions for the hours worked after the strike began. The Plan continued to pay employees benefits and to make lump sum distributions.

On December 30, 1974, the Board of Directors of the Company voted to suspend the Company's contributions to the trust, but it did not terminate the Plan. The Company did not notify the Plan's trustee that the payments had been suspended.

On April 1, 1975, the Company notified the Department of Labor and the Pension Benefit Guaranty Corporation (PBGC) that it had decided to terminate the Plan. Between April 1975 and November 1976, the Company and the UAW conferred with the PBGC regarding the coverage of the Plan under the plan termination insurance program. If the Plan was covered by the plan termination insurance program the PBGC would pay the Plan participants those guaranteed benefits which the Plan could not provide. 29 U.S.C. §§ 1322, 1342(d)(1)(B). Then, the PBGC would be authorized to seek reimbursement from Concord Control. 29 U.S.C. §§ 1362, 1368. The PBGC determined that as of April, 1975, the Plan provided for guaranteed benefits of about $1,105,000; the plan assets were valued at $280,000 on that date.

On August 24, 1976, the PBGC rejected the Company's contention that the Plan was exempt from the plan termination insurance program because the Plan did not provide for employer contributions at any time after September 2, 1974 (the effective date of Title IV of ERISA). 29 U.S.C. § 1321(b)(5). The PBGC also rejected the Company's assertion that the Plan was exempt because it was an individual account plan. 29 U.S.C. § 1321(b)(1).

On December 10, 1976, the Company filed a complaint in the district court seeking a declaratory judgment that the Plan was not covered by the plan termination insurance program. It also contended that the Plan's benefits were not guaranteed under the plan termination insurance program, and that Title IV of ERISA was unconstitutional. On June 13, 1977, the PBGC applied to the district court for an order terminating the Plan pursuant to section 4042 of ERISA. 29 U.S.C. § 1342. The district court consolidated the actions and the UAW and the Plan's trustee intervened. The parties stipulated to the facts and the case was tried on the merits. The district court held that the Plan did not "provide for" employer contributions after the effective date of ERISA and that it was exempt from the plan termination insurance program under section 4021(b)(5) of ERISA, 29 U.S.C. § 1321(b)(5).

## II.

In this appeal, the PBGC contends that the district court erred when it held that the Plan was exempt from coverage under the plan termination insurance coverage because it did not "provide for" employer contributions at any time after the effective date of ERISA. We agree.

Section 4021(b)(5) of ERISA, 29 U.S.C. § 1321(b)(5), provides that pension plans are excluded from plan termination insurance coverage if they have "not at any time after September 2, 1974 *provided for* employer contributions." (emphasis added) Concord Control asserts that the Plan was exempt because the funding provisions of the Plan expired when the pension agreement expired in August 1974. This was prior to the effective date of Title IV of ERISA. Concord Control contends that the exemption applies because it was the funding provisions which "provided for" employer contributions.

The PBGC rejected this contention. Its letter to Concord Control stated "The legislative history of the Act is clear that Section 4021(b)(5) was intended to exempt only those plans that are based solely on employee contributions." The PBGC found that the Plan was not terminated before Title IV became effective, and that it was not entitled to the exemption. As a result, the PBGC concluded the Plan was covered by the plan termination insurance coverage.

The district court rejected the PBGC's determination and concluded that the Plan was exempt it did not "provide for" employer contributions at any time after the effective date of Title IV of ERISA. It held:

> The pension agreement and the Plan were expressly made severable by Article II, § 3. Since it was the pension agreement which "provided for" plaintiff's contributions, plaintiff's entire obligation in this respect expired with the agreement on August 8, 1974. 29 U.S.C. § 1321(b)(5) is not addressed to a fund already created; it is addressed to continuing employer contributions. In this case the Company's obligation ended prior to September 2, 1974 when the Collective Bargaining Agreement and the Pension Agreement expired.

The district court's conclusion that 29 U.S.C. § 1321(b)(5) "is addressed to continuing employer contributions" contradicts the PBGC's interpretation of the exemption: an interpretation based on the legislative history.

In construing this exemption "the determination of the PBGC . . . is entitled to great deference in the construction and application of ERISA." *Connolly v. Pension Benefit Guar. Corp.*, 581 F.2d 729 (9th Cir. 1978) *cert. denied* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). Although the legislative history of ERISA does not specifically address the exemption found at 29 U.S.C. § 1321(b)(5), it does discuss an identical exemption from ERISA's minimum funding rules. 29 U.S.C. § 1081(a)(5). The legislative history explains "plans which have not provided for employer contributions at any time after the date of enactment are to be exempt from the minimum funding rules (i. e., plans of unions funded exclusively by contributions of the union members)." H.R.Rep.No.93–1280, 93d Cong., 2d Sess. 291 (1974) *reprinted in* [1974] U.S.Code, Cong., and Ad.News, at pp. 4639, 5072. The interpretation of this exclusion is consistent with the PBGC's interpretation of 29 U.S.C. § 1321(b)(5). We find that interpretation persuasive.

■ In this case, the Plan "provided for" employer contributions. Article II, section 1 of the Plan provided specific amounts which the employer was to pay into the trust for each hour worked by participating employees and the Plan specifically provided that employees were not supposed to contribute to the Plan. This is not the type of plan 29 U.S.C. § 1321(b)(5) was intended to exempt. At the time Title IV of ERISA became effective the Plan "provided for" employer contributions within the meaning of 29 U.S.C. § 1321(b)(5). Concord Control cannot rely on this exemption.

■ Concord Control's contention that the Plan is an individual account plan which is excluded from coverage under the plan termination insurance program is without merit. 29 U.S.C. § 1321(b)(1).

An individual account plan is defined as: a pension plan which provides for *an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account,*

and on income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. (emphasis added) 29 U.S.C. § 1002(34)

The term "individual account plan" refers to plans in which each participant's retirement benefit is determined solely by reference to the amount accumulated in that participant's account. Termination insurance is not necessary for these plans because by their very definition each participant's benefit is dependent on the amount accumulated in his account.

The district court found that the Plan did not establish individual accounts and that the benefits paid "were not based solely upon the amount paid in for hours worked by a specific employee." This finding is supported by the record. The Plan determined participants' benefits by their years of service and their age and was not an individual account plan. *Connolly v. Pension Benefit Guar. Corp.*, 581 F.2d 729 (9th Cir. 1978) *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979).

 Concord Control contends that the Plan's limitation of liability clause prevented the Plan's benefits from being characterized as "nonforfeitable." The PBGC only guarantees benefits characterized as "nonforfeitable." 29 U.S.C. § 1322(a). In *Nachman v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), the Supreme Court rejected the same contention and held that the term "nonforfeitable" was used in Title IV of ERISA "to describe benefits that were generally considered vested prior to the statute." 446 U.S. at 377, 378, 100 S.Ct. at 1734, 1735. The Court used the following definition of vested: "In essence, therefore, the vesting of a pension benefit simply means that the realization of the benefit is no longer contingent upon the individual's remaining in the service of the employer to normal retirement age." 446 U.S. at 378 n. 27, 100 S.Ct. at 1734 n. 27, *quoting*, D. McGill, Preservation of Pension Benefit Rights, 6 (1972). The benefits provided by the Plan had "vested." Neither the limita-

tion of liability clause nor the Trustee's authority to adjust benefits prevents these benefits from being characterized as "nonforfeitable" under Title IV of ERISA. See also, *A–T–O, Inc. v. Pension Benefit Guar. Corp.*, 634 F.2d 1013, 1018–19 (6th Cir. 1980).

Finally, Concord Control contends that Title IV of ERISA is unconstitutional. This same contention was rejected in *A–T–O, Inc. v. Pension Benefit Guar. Corp.*, 634 F.2d 1013, 1024–26 (6th Cir. 1980). In that case we noted that Congress considered the retroactivity problem and determined that employer liability would only accrue after the enactment of ERISA. "[O]nly an act by an employer after the enactment of ERISA could trigger employer liability under § 1362." 634 F.2d at 1026. Concord Control did not terminate the Plan until after the effective date of Title IV of ERISA. The imposition of employer liability is constitutional.

REVERSED AND REMANDED.